■ SUMITOMO MARINE & FIRE INSURANCE CO., LTD.—U.S. BRANCH, Appellant, v COLOGNE REINSURANCE COMPANY OF AMERICA et al., Defendants, and BUFFALO REINSURANCE COMPANY et al., Respondents.—Order and judgment of the Supreme Court, New York County (Beatrice Shainswit, J.), entered June 7, 1988 and July 7, 1988, respectively, which granted the motions of defendants-respondents the Philadelphia Reinsurance Corporation and the Buffalo Reinsurance Company and dismissed the complaint as against them, reversed, on the law, without costs, and the complaint reinstated against these defendants.

Supreme Court erred in granting summary judgment to defendants-respondents the Philadelphia Reinsurance Corporation (Philadelphia) and the Buffalo Reinsurance Company (Buffalo). The court incorrectly found that there had been a modification of the "original contract" between plaintiff-appellant, the Sumitomo Marine & Fire Insurance Co., Ltd. (Sumitomo), and its insured, Auburn Steel Co., Inc. (Auburn), by Sumitomo's addition of amendment 3 which, the court found, had not been accepted by respondents.

The all-risk insurance coverage provided by Sumitomo for Auburn's buildings and other property expressly excluded losses resulting from war and nuclear incidents. Amendment 3, however, extended coverage to radioactive contamination, as follows: "Sudden and accidental Radioactive Contamination, including resultant radiation damage * * * from material used or stored or from processes conducted on the described premises". The policy became effective on February 1, 1983, and shortly thereafter Auburn sustained a loss due to nuclear contamination from a load of scrap metal delivered to its premises.

Sumitomo indemnified its insured and sought reimburse-

ment from respondents in accordance with their respective reinsurance agreements. These agreements had been negotiated with respondents through Sumitomo's agent, Thomas A. Greene & Company, Inc. (Greene & Company). The agreement with respondent Philadelphia contains a multiparagraph clause excluding coverage for "any loss or liability by radioactive contamination". The reinsurance certificate issued by respondent Buffalo after it had received notice of the loss also contains a typewritten notation "excluding Radioactive Contamination". Based on these provisions, respondents sought summary judgment after depositions had been taken of the parties' witnesses.

In its cross motion for summary judgment, Sumitomo maintained that respondents knew or should have known of the incidental risk of nuclear contamination because all steel processing plants use cesium, a radioactive element, in a device that measures steel output. Sumitomo's assistant manager averred that "radioactive contamination coverage is normal for a steel plant." He also asserted that amendment 3 was inserted in the policy to provide the same coverage to Auburn as had been previously provided by another insurer, and that this amendment "was issued together with the policy form to Auburn". As to respondents' claim that they were not informed of the nuclear contamination coverage in their discussions with Sumitomo's agent, the attorney for Greene & Company submitted an affidavit stating that his client took no position with respect to the motion and cross motion and, without specifically addressing the merits, his client neither admitted nor adopted any of the statements in either of the movants' papers.

Given this record, Supreme Court erred in resolving the factual issues in respondents' favor. The evidence establishes that respondents issued their certificates containing nuclear exclusion clauses after they had received copies of the Sumitomo policy which included amendment 3. Under these circumstances, it was incumbent upon respondents to determine the scope of the coverage in the direct insurance policy before issuing their formal contract underwriting the risk of such coverage. The only question which remains is whether the unambiguous wording of the nuclear incident exclusion clause indeed places the risk of nuclear contamination such as occurred here outside the scope of respondents' undertaking.

Respondents' construction of this multiparagraph clause focuses on paragraph 4, which provides as follows: "Without in any way restricting the operations of paragraphs (1), (2),

and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against."

This language, respondents argue, excludes the nuclear contamination loss covered by Sumitomo under amendment 3, inasmuch as such hazard is named in that amendment and specifically insured against. However, paragraph 5 of the nuclear incident exclusion clause provides: "5. It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reinsured to be the primary hazard."

Respondents' reading of the nuclear exclusion clause founders on the fact that paragraph 5, unlike the preceding paragraph, is not prefaced with the phrase "[w]ithout in any way restricting the operations of paragraphs (1), (2), and (3) hereof". Paragraph 5, therefore, *is* meant to restrict the operation of the preceding provisions, paragraph 4 among them. Consequently, the exclusion of coverage in paragraph 4 when radioactive contamination is a named hazard specifically insured against in the direct policy is inoperative when, pursuant to paragraph 5, the risk of nuclear exposure from use of radioactive isotopes is not considered a primary hazard by the direct insurance carrier.

A question of fact remains as to whether Sumitomo considered the nuclear exposure from the use of cesium to be a primary or incidental hazard. The order and the judgment appealed from therefore should be reversed and the matter remanded for trial. Concur—Ross, J. P., Asch, Rosenberger and Ellerin, JJ.

Wallach, J., dissents in a memorandum as follows: I would affirm the order and judgment of the Supreme Court granting defendants' motion for summary judgment and dismissing the complaint against them. Plaintiff primary insurer commenced this action for breach of contract against two of its reinsurers because of their refusal to indemnify it against a claim made by plaintiff's insured for radioactive contamination. Defendant reinsurers moved for summary judgment, relying heavily on the facts and circumstances surrounding the formation of their contracts of reinsurance, as elicited at pretrial depositions, to show that they had no knowledge of plaintiff's specific agreement with the insured to cover radioactive contamination, and also to show that had they such knowledge they would not have agreed to reinsure plaintiff. In opposition,

plaintiff drew different inferences from the deposition testimony as to the parties' intent at the time of contract formation concerning coverage for radioactive contamination, but placed greater emphasis on the actual certificates, i.e., the formal contracts, of reinsurance issued by defendants many months after the facts and circumstances surrounding contract formation took place. It appears that in the insurance industry, contracts are formed on the basis of informal commitments, sometimes oral, referred to as "binders", and that "policies" formally reducing the entire agreement of the parties to writing may not be issued until many months later. Here, for example, plaintiff's direct policy with the insured was effective for the period February 1, 1983-February 1, 1984; defendants telexed or telephoned their binders on February 9, 1983 and February 10, 1983; the insured's radioactive contamination loss was sustained on February 21, 1983; it was not until October 1983 that a copy of plaintiff's direct policy with the insured was actually sent to defendants; and it was not until December 28, 1983 in the case of one defendant, and February 1, 1984 in the case of the other, that certificates of reinsurance were issued.

Plaintiff's direct policy with the insured was for "all-risks", which means, according to plaintiff, that it insured against loss of or damage to property arising from any fortuitous cause except those specifically excluded (citing Meritt, Glossary of Insurance Terms, at 9 [1982]). Among the hazards specifically excluded in plaintiff's standard-form direct policy is "nuclear", but this was overridden by a typewritten amendment No. 3 specifically including radioactive contamination as an all-risk hazard. This policy form containing amendment No. 3 was received by the reinsurers before they issued their certificates of reinsurance, and thus, there is plainly no merit to any contention by them that they would not have agreed to reinsure plaintiff had they known of plaintiff's agreement with the insured extending coverage to radioactive contamination. Whatever defendants' expectations at the time they issued their binders, it is a simple, undeniable fact that with full knowledge of plaintiff's direct policy, including amendment No. 3, they issued their certificates of reinsurance, and thereby unequivocally undertook to reinsure that policy. Plaintiff is entirely correct to emphasize that the "only real issue between the parties" is their different readings of those certificates, and that the dispute, in the first instance, raises only a question of contract interpretation.

Argument concerning the meaning of the certificates pro-

ceeds on the assumption that both contain an endorsement denominated a "Nuclear Incident Exclusion Clause". The first three paragraphs of that clause exclude reinsurance coverage for damage to property exposed to a high degree of nuclear risk, such as, for example, property on which is located a nuclear reactor or an installation "using substantial quantities of radioactive isotopes or other products of nuclear fission". Paragraph 4 then proceeds to broaden the exclusion greatly. It provides: "Without in any way restricting the operations of paragraphs (1), (2), and (3) hereof, this Reinsurance does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against."

Because plaintiff's direct policy with the insured specifically names radioactive contamination as a covered hazard in amendment No. 3, defendants rely on paragraph 4 as the basis for their refusal to indemnify plaintiff. Against this, plaintiff relies on paragraph 5, which provides: "It is understood and agreed that this [Nuclear Incident Exclusion] Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard."

Plaintiff's insured is a steel company that uses a radioactive isotope known as cesium in its operations. However, the risk posed by the use of this material is small, and, although the majority declines to make factual finding to this effect, a most cursory reading of plaintiff's direct policy shows that radioactive contamination was hardly considered to be "the primary hazard" insured against therein. This being an indisputable fact, plaintiff argues that its right to indemnification is established by paragraph 5 of the nuclear incident exclusion clause.

Under the majority's reading of the nuclear incident exclusion clause, the paragraph 4 exclusion of radioactive contamination when that risk is a named hazard is operative only if radioactive contamination is considered by the primary insurer to be the primary hazard insured against, which is to say, I think, that the exclusion is operative only if the insured is a nuclear power plant or otherwise in, as it were, the nuclear business. Yet, this is precisely the exclusion provided for in the first three paragraphs of the clause. If paragraph 4 is not to be deemed redundant of the earlier paragraphs, and therefore superfluous, it must be read to effect an exclusion when the risk of nuclear contamination is not considered to be the primary hazard insured against, i.e., when the insured is

not in the nuclear business. Because of paragraph 5, however, the majority refuses to give paragraph 4 this effect, or indeed any effect distinct from the first three paragraphs of the clause.

The one fact behind the written policies of insurance and reinsurance I would note is plaintiff's admission that it would not have paid its insured's claim for radioactive contamination had amendment No. 3 not been included in the direct policy. I think paragraph 5 was intended to operate upon that contingency by requiring the reinsurers to defend the primary insurer, and, if need be, indemnify it, in the event a claim for radioactive contamination were made notwithstanding the absence of a stipulation in the direct policy specifically naming radioactive contaminations as a covered hazard. Here, however, because of the presence of such a stipulation, i.e., amendment No. 3, paragraph 5 should be held inoperative. Put otherwise, I think paragraphs 4 and 5 can be better reconciled by holding the latter operative when the former is not.

In effect, the reinsurers' nuclear incident exclusion clause said to the primary insurer: Since you specifically named radioactive contamination as a covered hazard, we won't reinsure you. But, had you not named radioactive contamination as a specifically covered hazard, and a claim for radioactive contamination were nevertheless made against you under this all-risk policy, we would have defended you against that claim and indemnified you should the insured have prevailed, unless you considered radioactive contamination to be the primary hazard insured against in your policy, or unless some other proviso in the nuclear incident exclusion clause were applicable, such as, for example, the use by the insured of substantial quantities of radioactive isotopes.